W. H. CANN, Appellant,

v.

AIR REDUCTION COMPANY, Inc.,
Appellee.

Charles E. DEVINE et ux., Appellants,

v.

AIR REDUCTION COMPANY, Inc.,
Appellee.

J. M. SUTHERLAND et ux., Appellants,

v.

AIR REDUCTION COMPANY, Inc.,
Appellee.

Court of Appeals of Kentucky.

Sept. 30, 1960.

A. Joe Asher, Benton, for appellants.

John C. Lovett, Benton, for appellee.

CLAY, Commissioner.

This is a contempt proceeding against appellee for the alleged violation of an injunction order. The Chancellor denied the relief sought by appellants.

Appellants in their brief did not see fit to acquaint us with the facts out of which this controversy arose and our understanding of the circumstances is based upon appellee's brief.

Appellee operates a carbide plant near Calvert City, which is located south of the Tennessee River. In the production of acetylene gas the plant discharges a substantial amount of water containing 15 percent unusable solids. This sludge is transferred into four settling basins. Originally the overflow from the settling basins passed into a slough which traverses the land of appellants. This slough, south of appellee's plant, parallels the Tennessee River in an east-west direction and the natural drainage eventually empties into the Tennessee River some distance east of the properties of the parties.

As a result of litigation, an agreed judgment was entered in this case in July 1957, by virtue of which appellee would no longer be permitted to decant excess water from its settling basins into the slough. This agreed order provided:

"That the defendant, Air Reduction Co., Inc., will at its own expense take such steps as may be necessary to cease, and will cease on or before May 1, 1956, the discharge of water from its settling ponds or other plant

operation into, upon or across, or in such manner as will cause same to cross any of the properties of the plaintiffs."

In compliance with this order and prior to May 1, 1956, appellee altered its method of operation by pumping excess water into deep wells from which it was subsequently pumped into a new settling basin on the south bank of the Tennessee River (to the north) and thence into the Tennessee River. Admittedly, since the adoption of the new method of water disposal, on three occasions excess water from the primary settling basins has escaped or been let into the slough. These violations of the injunction order were shown to have been caused by failures of electrical power for the pumps and by an almost unprecedented rainfall on one occasion.

Appellants introduced several witnesses who testified that they had seen water in the slough at various times since the date of the injunction order, some of which appears to have been discolored, and there was some evidence of a slight amount of seepage through the walls of the settling basins. Appellants' witnesses were not able to pin-point the source of the water, which admittedly at some times fills the slough. It appears that it is a natural drainage ditch and that surface water from a large area flows through or stands in it from time to time. Appellee introduced evidence of heavy rainfalls which often coincided with the times appellants' witnesses said they had observed substantial water in the slough.

Appellants failed to show (except for the three special occasions mentioned above). that any contaminated water whose source could be attributed to appellee's operation ever reached their lands or caused any damage whatsoever.

After hearing all of the evidence and making a careful inspection of the premises involved, the Chancellor was of the opinion that. appellee had in good faith complied with the injunction order and that appellants' proof failed to establish any substantial violation of it which would justify finding appellee guilty of contempt. An examination of this record convinces us of the correctness of this judgment.

The judgment is affirmed.